2019 IL App (2d) 190577-U
No. 2-19-0577
Order filed November 27, 2019

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| PEOPLE *ex rel*. ILLINOIS DEPARTMENT OF HEALTHCARE AND FAMILY SERVICES *ex rel*. | ) ) ) ) | Appeal from the Circuit Court of Du Page County. |
| DEBRA MOSS, | ) ) | |
| Petitioner, | ) ) | |
| v. | ) ) | No. 9-F-111 |
| AARON FINNEY, SR., | ) ) | |
| Defendant-Appellee | ) ) | |
| (Kimberly Moss-Daugherty, Third-Party Petitioner-Appellant). | ) ) ) | Honorable Neal W. Cerne, Judge, Presiding. |

_____

JUSTICE JORGENSEN delivered the judgment of the court.
Justices Hudson and Bridges concurred in the judgment.

**ORDER**

¶ 1   *Held*:  The trial court did not err in denying the motion to substitute as of right, where the third-party petitioner did not move to intervene or seek non-party standing to challenge the underlying order, instead asking the trial court to first grant her motion to substitute as of right and then have the *next* judge rule on questions of intervention and standing and, ultimately, the merits of the case.  Affirmed.

¶ 2    In February 2019, the trial court in the instant parentage action granted the *pro se* emergency motion for sole custody of A.M. (born in 2008) filed by her only surviving biological parent, respondent-appellee, Aaron Finney, Sr.  Aaron did not name third-party petitioner-appellant, Kimberly Moss-Daugherty, A.M.'s maternal aunt, as a party to the parentage proceedings, nor did he provide her with notice of the parentage proceedings, even though the probate court had earlier appointed her A.M.'s guardian.

¶ 3    In March 2019, among other motions, Kimberly moved pursuant to section 2-1301 of the Code of Civil Procedure (Code) to vacate the parentage order granting Aaron custody.  735 ILCS 5/2-1301 (West 2018).  A few weeks later, with the motion to vacate still pending and without moving to intervene or seek non-party standing to request that the parentage order be vacated, Kimberly moved for a substitution of judge as of right pursuant to section 2-1001(a)(2) of the Code.  735 ILCS 5/2-1001(a)(2) (West 2018).  She argued that the motion for substitution should be granted first, and the *next* judge should determine whether she could intervene or whether she had non-party standing to challenge the underlying custody order.  In her view, the questions of intervention and standing "directly related" to the merits of the custody case, and, because a trial court could not rule on an issue directly relating to the merits of the custody case without rendering the motion to substitute untimely, then the motion to substitute must be ruled on before the questions of intervention and standing.

¶ 4    We disagree.  The questions of intervention and standing do not directly relate to the merits of the custody case such that ruling on them would preclude the court from granting a motion for substitution as of right.  The trial court did not err in denying Kimberly's motion to substitute, where Kimberly did not first move to intervene or seek non-party standing to challenge the underlying order, instead asking the trial court to first grant her motion to substitute as of right and then have the next judge rule on questions of intervention and standing and, ultimately, the merits of the case.

¶ 5 Further, Kimberly's appellate complaint that the trial court determined that she did not have standing is taken out of context. The trial court had stated that Kimberly did not have "standing" in the context of explaining that she could not move for substitution of judge until after she had obtained leave to intervene or a court determined that she had non-party standing to challenge the merits of the custody determination. As such, Kimberly's argument that she does, indeed, have standing to challenge the merits of the custody determination, and was a necessary party to that proceeding such that the parentage order should be vacated, is premature. Affirmed.

¶ 6                                    I. BACKGROUND

¶ 7 The appealed from proceedings occurred in the parentage case No. 9-F-111. However, for background, we first recount proceedings that occurred in the probate case No. 15-P-601. To do so, we take judicial notice of the court filings, as contained in the supplemental record on appeal.

¶ 8                              A. Probate Proceedings

¶ 9 Soon after A.M.'s birth, her mother, petitioner, Debra Moss, became disabled. She had stage-four kidney failure. Debra's mother, Karen Moss, cared for both Debra and A.M. in her Naperville home.

¶ 10 In December 2014, Debra passed away. Karen petitioned for, and was granted, guardianship of A.M. The petition stated that Debra was deceased, and Aaron had "abandoned" A.M. The record shows that Aaron was served notice of the petition.

¶ 11 In July 2017, Karen passed away. A.M.'s maternal aunt, Kimberly, petitioned for, and received guardianship of A.M. The petition stated that both previous guardians, Debra (2014) and Karen (2017) were deceased, and Aaron "lives elsewhere." The record shows that Aaron was served notice of the petition.

¶ 12      In a supplement to the petition, Kimberly represented that she had already raised her own child, who was now a sophomore in college.  She remained active in the Boys and Girls Club charity.  She was gainfully employed and would supplement any of A.M.'s financial and material needs.  She would ensure that A.M. continued to attend school and Girl Scouts, summer camp, and counseling to address the loss of her mother and, now, her grandmother.

¶ 13      In July 2018, the probate court granted Kimberly leave to remove A.M. to Fort Meyers, Florida.  The court concluded: "It is further ordered that the guardian no longer need report to this court.  The case is closed."   (The record does not contain Kimberly's petition to remove, only the court's subsequent written order.)

¶ 14                                         B. Parentage Action

¶ 15      Meanwhile, the following proceedings had taken place in the parentage case no. 9-F-111.  In 2008, Debra petitioned for a determination of paternity.  In 2009, Debra and Aaron entered into an agreed order establishing his paternity.

¶ 16      Between 2009 and 2014, the record reflects numerous filings concerning: (1) child support (there were repeated allegations that Aaron failed to pay his $25 to $50 per week in child support); (2) visitation (there were repeated allegations that Aaron arrived late to visits without notifying Debra in advance; the court ordered that visits would be cancelled if Aaron was more than 30 minutes late and failed to alert Debra to his tardiness; Aaron later complained that visits were cancelled for no reason); (3) custody (Aaron was awarded two afternoons per week; Aaron filed several petitions to modify custody, alleging that A.M. had bug bites and "musty" clothing and that Debra spent too much time in the hospital to care properly for A.M.; Aaron voluntarily withdrew these petitions); (4) guardian *ad litem* (GAL) reports (Debra participated in the GAL interviews; Aaron did not); and (5) orders of protection (in 2012, Debra filed several orders of protection, alleging verbal abuse by Aaron, including

telling her that he wished she would die so that he could have custody of A.M. and that he would like to throw her, Debra, under a bus; the orders of protection were entered as default judgments and later vacated).

¶ 17    The record contains no trial court filings between September 2014 and June 2018.

¶ 18    In June 2018, Aaron e-mailed the circuit clerk, stating that Debra's sister "ran off" with A.M. (This e-mail would have been written one month before the probate court granted Kimberly leave to move to Florida.)  A staff member replied, telling him the location of proper court forms and instructing him not to reply to the e-mail.

¶ 19    On February 15, 2019, Aaron, acting *pro se*, filed an emergency motion for sole custody.  It stated:

> "Petition the courts to assist in gaining [sole] custody of [A.M.][, to] be given to me immediately without prejudice.
>
> I[,] Aaron Finney[,] am the only living parent.  [Debra] has been deceased for five years. Given previous order violations filed by myself in asking for relief and Rule to Show cause why the plaintiff continuously violate[s] court orders by deny[ing] the father his visits, they have lied to the courts [by] using [*sic*] order of protection against me under false pretenses to this court.
>
> In relief[,] I ask for full custody of [A.M.] at once.
>
> Submitted respectfully and humbly."

Aaron sent no notice to any party.

¶ 20    On February 19, 2019, the trial court granted Aaron's motion, writing:

"Based on the representation that the natural mother, Debra Moss, died on November 14, 2014, the natural father, Aaron Finney, Sr., is the surviving custodial parent of the minor child, A.M., d/o/b [October 8, 2008].

Mr. Finney's parentage was established on [July 13, 2009,] by this court.

Mr. Finney's child support obligation to Debra Moss is terminated as of her death, October 14, 2014."

¶ 21     On March 7, 2019, Kimberly, through counsel, filed an appearance in the parentage case. Then, on March 8, 2019, she filed a section 2-1301 motion to vacate the trial court's February 19, 2019, order. 735 ILCS 5/2-1301 (2018). Contemporaneous with the motion to vacate, she filed: (1) a section 2-619 motion to dismiss Aaron's February 15, 2019, emergency motion for lack of jurisdiction, in that the July 2, 2018, probate order effectively relinquished Illinois jurisdiction and transferred the case to Florida. 735 ILCS 5/2-619 (West 2018); 750 ILCS 36/101 *et seq.* (West 2018); (2) a motion to transfer the parentage case to probate court (after the February 19 order is vacated) for the purpose of consolidation. Aaron responded, *pro se*.

¶ 22     Separately, on March 26, 2019, before the trial court ruled on any of Kimberly's pending motions, Kimberly moved for substitution of judge as a matter of right. 735 ILCS 5/2-1001(a)(2) (West 2018). The trial court denied the motion to substitute and struck all of Kimberly's pending motions. In reaching its decision, the court asked:

"THE COURT: On what authority do you have to stand here today?

[COUNSEL]: Judge, my client is the legal guardian of the minor child.

THE COURT: Has she intervened in this case?

[COUNSEL]: She has filed an appearance and filed motions and is seeking—

THE COURT: I disagree. You have no standing. You have not asked to intervene in this case. So, what's your standing?

[COUNSEL]: Judge, my standing is that my client represents the minor child.

THE COURT: No. No. No. The case caption is [Debra] Moss versus [Aaron] Finney. *** On what authority to you have to be here today? Standing, in essence, is what I am asking.

[COUNSEL]: By the authority granted by this court that appointed my client as the legal guardian of the minor child.

THE COURT: I didn't appoint her.

[COUNSEL]: The circuit court of the 18th judicial circuit appointed my client as the legal guardian.

THE COURT: In a different case.

[COUNSEL]: In the probate case, yes.

THE COURT: Correct. Okay, so I am going to deny your motion [to substitute]. As a matter of fact, I am going to strike all your motions, due to the fact that you have no standing."

The court concluded: "I think you have no standing because you haven't asked to intervene in this case."

¶ 23    On May 5, 2019, Kimberly moved to reconsider the denial of her motion to substitute judge and the striking of her other motions. Aaron did not attend the hearing; he sent his oldest daughter to observe on his behalf. The court denied the motion, explaining that granting a motion to substitute judge before determining that Kimberly had a right to intervene would constitute an advisory opinion.

The court concluded: "You have to [first] ask leave of court to either intervene or become a necessary party." This appeal followed.

¶ 24        II. ANALYSIS

¶ 25    Kimberly argues that the trial court erred in denying her motion to substitute judge as of right pursuant to section 2-1001(a)(2) of the Code. That section provides:

"(a) A substitution of judge in any civil action may be had in the following situations:

* * *

(2) Substitution as of right. When a party timely exercises his or her right to a substitution without cause as provided in this paragraph (2).

(i) Each party shall be entitled to one substitution of judge without cause as a matter of right.

(ii) An application for substitution of judge as of right shall be made by motion and shall be granted if it is presented before trial or hearing begins and before the judge to whom it is presented has ruled on any substantial issue in the case, or if it is presented by consent of the parties." 735 ILCS 5/2-1001(a)(2) (West 2018).

¶ 26    Civil litigants are entitled to one substitution of judge without cause as a matter of right. 735 ILCS 5/2-1001(a)(2)(West 2018); *Gay v. Frey*, 388 Ill. App. 3d 827, 831-32 (2009). The trial court has no discretion to deny a timely and proper motion for substitution as of right. *Id*. at 833. A motion for substitution as of right is timely filed if it is filed before the judge has ruled on a substantive issue in the case. *Id*. A ruling on a substantive issue is one that directly relates to the merits of the case. *Id*. In some instances, a motion for substitution may be denied even before a substantive ruling has been made, if the movant had an opportunity to form an opinion as to the judge's reactions to his or her

- 8 -

claims. *Id.* The reason behind the rule is that it prevents a movant from judge shopping after forming an opinion that the judge may be unfavorably disposed toward his or her cause. *Id.*

¶ 27 We review the trial court's decision to grant or deny a motion to substitute as of right *de novo*. *Id.* Similarly, the issue of whether there was a ruling on a substantial issue in the case, as an element for a substitution of judge as of right, is also a question of law warranting *de novo* review. *Rodish v. Commacho-Esparaza*, 309 Ill. App. 3d 346, 350 (1999). Our review must lean toward favoring rather than defeating a motion for substitution of judge. *Id.*

¶ 28 Aaron has not filed a response brief. This does not mean, however, that we cannot address the merits of the appeal or that, in the absence of an appellee brief, we should reverse. "[T]he judgment of a trial court should not be reversed *pro forma* for the appellee's failure to file its brief as required by rule." *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 131 (1976). The trial court's considered judgment should not be set aside without some review of the merits of the appeal. *Id.* In this vein, the supreme court has instructed:

"We do not feel that a court of review should be compelled to serve as an advocate for the appellee or that it should be required to search the record for the purpose of sustaining the judgment of the trial court. It may, however, if justice requires, do so. Also, it seems that if the record is simple and the claimed errors are such that the court can easily decide them without the aid of an appellee's brief, the court of review should decide the merits of the appeal. In other cases, if the appellant's brief demonstrates *prima facie* reversible error and the contentions of the brief find support in the record, the judgment of the trial court may be reversed." *Id.* at 133.

¶ 29 In this case, the appellant's brief has not demonstrated *prima facie* reversible error supported by the record.

¶ 30    Kimberly argues that a court can and should rule on a motion for substitution of judge as of right *before* the court has determined that she has a right to intervene (or that she has non-party standing) to challenge the February 19 parentage order granting custody to Aaron. She reasons that, if the trial court were to first rule that she has a right to intervene, then any subsequent motion for substitution of judge as of right would be untimely because the court would have already ruled on a substantive issue that "directly relates" to the merits of the custody determination.

¶ 31    For the reasons that follow, we disagree with Kimberly's reasoning. The trial court may determine that Kimberly has a right to intervene without rendering untimely a subsequent, or contemporaneously filed, motion for substitution of judge. A determination of Kimberly's right to intervene will not require the court to rule on a substantive issue that "directly relates" to the merits of the custody determination. Therefore, the motion to substitute would not be untimely.

¶ 32    We now turn more specifically to Kimberly's arguments, which she has divided into two parts, section "A" and section "B." In section "A" of her argument, Kimberly discusses two section 2-1001(a)(2) substitution cases, *Safeway Insurance Company v. Ebijimi*, 2018 IL App (1st) 170862 (2018), and *In re Austin D.*, 358 Ill. App. 3d 277 (2005), in an attempt to show that an intervention determination would "directly relate" to the merits of the custody dispute. Neither of these substitution cases, nor the other substitution cases that Kimberly cites but does not discuss, concern intervention. Rather, Kimberly attempts to show by way of analogy that intervention is the sort of issue that directly relates to custody disputes and that ruling on that issue would render untimely her motion to substitute.

¶ 33    In *Safeway*, the trial court denied the litigant's motion to substitute judge. The trial court had already ordered the litigant to come forward with certain evidence concerning insurance coverage, granted leave to depose certain witnesses, and denied other discovery motions. These discovery rulings were "directly related" to the merits of the case, because they decided what was relevant to the case.

*Safeway*, 2018 IL App (1st) 170862, ¶ 35. Also, in denying the motion to substitute, the trial judge stated that there was a " 'testing of the waters during [the] hour-long hearing on [discovery matters].'" *Id*. ¶ 34. The litigant provided no transcript or bystander's report that would allow the reviewing court to question that conclusion. *Id*. Thus, the appellate court affirmed the denial of the motion to substitute. *Id*. ¶ 35.

¶ 34 In *Austin D*., the trial court denied the mother's motion to substitute judge. The trial court had already conducted a shelter-care hearing at which the mother was present (but was without counsel), heard the testimony of two witnesses, determined that probable cause existed to believe that Austin was a neglected minor, determined that no efforts could be made to prevent his removal given the exigent circumstances, granted temporary custody with the Department of Children and Family Services, and ordered that the mother's visitation be supervised.

¶ 35 The appellate court reversed, determining that the trial court's shelter-care rulings had not "directly related" to the merits of the case. *Austin D.*, 358 Ill. App. 3d at 283. It reasoned that a probable cause finding was not a *per se* ruling of substance, particularly if the court declined to assess the credibility of the witnesses. *Id*. at 282. In the case before it, the court assessed only the State's witnesses, and did not have to make conflicting credibility determinations. *Id*. at 283. Thus, the court's probable cause ruling *indirectly*, rather than *directly*, related to the merits of the case. *Id*.

¶ 36 Kimberly argues that this case is more like *Safeway* and less like *Austin D*. We disagree. In this case, to decide whether Kimberly should be allowed to intervene, the court would need only to take judicial notice of the guardianship order in the probate case. The court would not need to assess credibility or make a decision directly relating to the merits of the case. If, in *Austin D*., making a probable cause determination after hearing evidence from only one side did not constitute a substantive ruling on the ultimate merits of the case, then certainly, here, an assessment of the documentation

supporting Kimberly's right to participate in the case will not constitute a substantive ruling on the ultimate merits of the court's custody decision.

¶ 37    Substantive decisions relating to the merits of A.M.'s custody can be addressed after a court grants Kimberly a right to intervene (or grants her non-party standing) to challenge the February 19 parentage order (presuming it does) and after the court grants Kimberly's motion to substitute judge (presuming it does).  Making a determination that Kimberly can intervene as a party or that she has non-party standing to challenge the February 19 parentage order would not have been a substantive ruling that would render a motion to substitute untimely.

¶ 38    Our own research has not led us to any case indicating that a motion to substitute cannot be filed contemporaneously with, or subsequent to, a motion to intervene.  In *In re Estate of Veatch*, 93 Ill. App. 3d 413, 415 (1981), for example, the cousin of a woman with a congenital mental impairment petitioned to intervene when the woman's guardian sought to enter into a large transaction on the woman's behalf.  The cousin simultaneously moved to substitute judge.  The court denied the cousin's motion to intervene.  It also denied her motion to substitute judge, *not* because ruling on the motion to intervene had been a substantive ruling, but because the cousin could not request a substitution of judge when she was not a party to the case.  This case anecdotally supports that a petition to intervene can and should be filed prior to, or contemporaneous with, a motion to substitute, and it outright supports the instant trial court's reasoning that a non-party cannot move to substitute without first intervening or establishing non-party standing.

¶ 39    Here, Kimberly did not move for intervention or ask for the trial court to rule that she had non-party standing.  In fact, she expressly stated that she wanted the trial court to first grant her motion to substitute, and leave the question of party status and/or non-party standing to the next judge.  On appeal, Kimberly does not brief the requirements to intervene as of right or to acquire non-party standing.

Instead, she cites *Flood v. Richey*, 2016 IL App (4th) 150594, ¶¶ 15, 23, which sets forth the requirements to intervene as of right (timeliness, sufficient interest, and no adequate representation of interest by existing parties), and, having found those elements met, declined to address the litigant's alternative argument of non-party standing. This lack of briefing is of no import, because there is nothing to review where Kimberly asked the trial court not to rule on these issues and to reserve them for the reassigned trial judge.

¶ 40    In section "B" of her argument, Kimberly argues that the trial court erroneously determined that she had no standing. Kimberly takes the trial court's statement out of context. The trial court stated Kimberly did not have "standing" in the context of ruling that she could not move for a substitution of judge until *after* the court determined whether she should be allowed to intervene or granted non-party standing to challenge the custody order in the parentage case. We have already affirmed the trial court on this point.

¶ 41    The trial court did not determine whether she should be allowed to intervene. Kimberly expressly told the court that she did not want it to rule on that question, because she (incorrectly) believed that doing so would render her motion to substitute untimely. Therefore, Kimberly's appellate arguments—that she has standing pursuant to section 602(g) of the Illinois Parentage Act (750 ILCS 46/602(g) (West 2018) (a person has standing if they have physical possession of, have been allocated parental support responsibilities to, or are providing financial support to a minor child), or section 601.2(b) of the Illinois Marriage and Dissolution of Marriage Act (750 ILCS 6/601.2 (West 2018) (a proceeding for allocation of parenting responsibilities may be commenced by a person other than a parent, if the minor is not in the physical custody of one of his or her parents)—are premature. Also premature is Kimberly's argument that she is a necessary party, and, therefore, the court's February 19

parentage order was void. See *Lain v. John Hancock Mutual Life Insurance Co.*, 79 Ill. App. 3d 264, 269 (1979).

¶ 42    Finally, we note that aspects of the instant controversy might have been avoided if the trial court had not granted Aaron's *pro se* custody petition based merely on Aaron's "representations." Even when the opposing party fails to appear or plead (here, Debra was deceased), the court may require proof of the allegations upon which relief is sought. 735 ILCS 5/2-1301(d) (West 2018). The face of Aaron's custody petition should have alerted the trial court that something was amiss. Aaron represented that Debra had been deceased for five years, but Aaron also stated that he himself did not have custody. Aaron referred to his opponents as "they." Therefore, the court should have been alerted that another person had custody of this 11-year-old child and, at least potentially, a necessary party was missing from the proceedings. Of course, we do not have the transcripts detailing the trial court's custody ruling, but it seems that the court should have been able to question Aaron, requiring him to notify and/or name Kimberly a party to the suit. However, based on the manner in which this case has unfolded procedurally, Kimberly must now move to intervene or otherwise establish her right to be heard in the parentage case *before* she can obtain a substitution of judge as of right.

¶ 43                                   III. CONCLUSION

¶ 44    For the reasons stated, the judgment of the circuit court of Du Page County is affirmed.

¶ 45    Affirmed.