NOTICE
This Order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2024 IL App (4th) 230783-U

NOS. 4-23-0783, 4-23-0784 cons.

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
February 15, 2024
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* N.S., a Minor | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Peoria County |
|       Petitioner-Appellee, | ) | No. 23JA5 |
|       v.      (No. 4-23-0783) | ) | |
| Mercedez S., | ) | |
|       Respondent-Appellant). | ) | |
| ---------------------------------------------------------------------- | ) | |
| *In re* A.S., a Minor | ) | No. 23JA6 |
| | ) | |
| (The People of the State of Illinois, | ) | |
|       Petitioner-Appellee, | ) | Honorable |
|       v.      (No. 4-23-0784) | ) | Derek G. Asbury and |
| Mercedez S., | ) | Mark E. Gilles, |
|       Respondent-Appellant). | ) | Judges Presiding. |

JUSTICE KNECHT delivered the judgment of the court.
Justices Steigmann and DeArmond concurred in the judgment.

**ORDER**

¶ 1    *Held*: The appellate court granted the motion to withdraw as appellate counsel and affirmed the trial court's orders, concluding no issue of arguable merit could be raised on appeal.

¶ 2    Respondent mother, Mercedez S., appeals from the trial court's orders adjudicating her daughters, N.S. (born September 28, 2022) and A.S. (born September 29, 2021), neglected and/or abused, making them wards of the court, and placing guardianship and custody with the Illinois Department of Children and Family Services (DCFS). On appeal, respondent's appellate counsel moves to withdraw on the ground no issue of arguable merit can be raised. For the reasons

that follow, we grant appellate counsel's motion and affirm the trial court's orders.

¶ 3                                  I. BACKGROUND

¶ 4          Respondent and Tyler S. are the minors' parents. Tyler S. is not, however, a party to this appeal.

¶ 5                        A. Petitions for Adjudication of Wardship

¶ 6          On January 12, 2023, the State filed petitions for adjudication of wardship, alleging (1) N.S. and A.S. were neglected minors in that they were subject to an environment injurious to their welfare while living with their parents, respondent and Tyler S., and (2) N.S. was an abused minor in that physical injury was inflicted upon her by one of her parents. In support of these allegations, the State alleged, on December 15, 2022, N.S., having been in the care of her parents along with A.S., was found to have current and past brain hemorrhaging for which her parents presented no history to explain said injuries. The State further alleged: (1) Tyler S., who was with N.S. when she became unresponsive, told police more than eight different explanations for her injuries, all of which he later retracted; (2) respondent visited N.S., who had been hospitalized since December 15, once or twice since December 25 and left town with a boyfriend; (3) Tyler S. had not visited N.S. since a few days after December 25; (4) respondent demanded the maternal grandmother be banned from the hospital on January 9, 2023, despite the grandmother having visited N.S. daily; (5) both parents had a history of mental health issues; and (6) respondent was indicated by DCFS on June 17, 2020, for "substantial risk of physical injury/environment injurious to health and welfare."

¶ 7                   B. First Appearances and the Shelter Care Hearing

¶ 8          Also on January 12, 2023, the trial court, the Honorable Mark E. Gilles presiding,

conducted a first appearance and shelter care hearing. All later proceedings were presided over by the Honorable Derek A. Asbury.

¶ 9 At the initial hearing, the following were present: (1) respondent, (2) Tyler S., (3) an attorney for the State, (4) an attorney serving as the guardian *ad litem* (GAL), and (5) a child protection specialist with DCFS. At the time of the hearing, A.S. was in the care of a close family friend, and N.S. remained hospitalized.

¶ 10 The trial court commenced the proceeding by inquiring about legal paternity. The GAL informed the court she believed respondent and Tyler S. were married but noted she did not have a copy of the marriage certificate. The GAL asked for Tyler S. to be found to be the putative father. On inquiry of the court, Tyler S. indicated he and respondent were married after A.S.'s birth but before N.S.'s birth. The court found Tyler S. to be the putative father of the minors.

¶ 11 The trial court then informed respondent and Tyler S. of the allegations in the petitions, their rights, and the progression of the proceedings. In relevant part, the court informed respondent and Tyler S. of the following: "Respondents in cases like this *** have the right to be represented by counsel. If the respondents, you parents, are financially unable to hire an attorney, one would be appointed at no cost." The court concluded with the following:

"I'll get back to the right to counsel for future court appearances. Today, I need to make decisions. Before you'll have any opportunity to have court appointed counsel, I would need to decide whether or not their children should be placed in the temporary custody of [DCFS]."

¶ 12 The trial court inquired if Tyler S. had any objection to the minors being placed in

- 3 -

the temporary custody of DCFS. Tyler S. requested further explanation, as he did not understand the issue, which the court then provided. Eventually, Tyler S. indicated he had no objection. The court inquired if respondent had any objection to temporary custody. Respondent objected.

¶ 13　　　　The State presented testimony from the child protection specialist who was present at the hearing. According to the DCFS worker, N.S. had been hospitalized since December 15, 2022, with current and past brain hemorrhaging for which respondent and Tyler S. presented no history to explain said injuries. In the weeks following N.S.'s hospitalization, respondent and Tyler S. visited N.S. less than six times. On January 9, 2023, respondent requested to have the maternal grandmother, who had been visiting N.S. daily, removed from the safety plan because she had prevented her from holding N.S. Respondent also reported on that date that she had been struggling with her mental health "due to the stress and trauma of [N.S.] being injured" and had travelled to St. Louis with her paramour to have "a break from the situation."

¶ 14　　　　The GAL opined temporary custody was appropriate in light of the contents of the petition and the testimony from the child protection specialist.

¶ 15　　　　Based upon the testimony presented and the GAL's recommendation, the trial court found the minors should be placed in the temporary custody of DCFS. The court then returned to the issue of counsel. Upon learning both respondent and Tyler S. desired the appointment of counsel, the court inquired into their financial circumstances. Based upon that inquiry, the court appointed separate counsel to represent respondent and Tyler S. The court then set the matter for answers to the petitions.

¶ 16　　　　　　　　　　　C. Answers and Continuances

¶ 17　　　　In February 2023, respondent and Tyler S., through their respective counsel, filed

answers to the State's petitions for adjudication of wardship, which were then subject to clarification at multiple hearings. At the initial hearing, the trial court found Tyler S. to be the legal father of N.S. Ultimately, Tyler S. stipulated to the allegations in the petitions, with the caveat he maintained he did not abuse N.S. Respondent, in turn, stipulated to only certain allegations in the petitions, which came with several caveats. As a result of the answers, the court set the matter for a contested adjudicatory hearing. While the court initially scheduled the adjudicatory hearing for April 11, 2023, it was later continued to April 25 on the motion of respondent and with no objection by Tyler S. On April 25, the court again, due to further clarification of respondent's answer and upon finding it was in the minors' best interests, continued the adjudicatory hearing to June 6 over the objection of respondent.

¶ 18                                D. Adjudicatory Hearing

¶ 19         On June 6, 2023, the trial court commenced a two-day adjudicatory hearing, which concluded on July 19, 2023. At the commencement of the hearing, Tyler S. was found to be the legal father of A.S. The State presented the stipulations of the parties, medical records of N.S., and testimony of Dr. Channing Petrak, a qualified expert in abuse pediatrics. Respondent testified on her own behalf.

¶ 20         Dr. Petrak testified she evaluated N.S and reviewed N.S.'s medical records. N.S. had "sustained head injury including subdural hematoma, subarachnoids, brain tissue injuries, [and] some parenchymal injuries." Dr. Petrak observed N.S. to have "alternating lethargy and irritability, which is often a sign of neurological injury, as well as a bulging fontanel, *** which is an indicator of increased intercranial pressure." Dr. Petrak did not observe any bruising or externals signs of trauma on N.S. Dr. Petrak testified "there was no report that [N.S.] was rolling,"

and mobility for a child of N.S.'s age typically involved lifting the head and possibly "push[ing] up on their arms a little bit." Dr. Petrak opined, based upon her evaluation of N.S. and review of N.S.'s medical records, N.S.'s injuries "were highly suspicious for abuse."

¶ 21 Respondent testified N.S. was generally a "calm" baby and "the only time she would get difficult is when she was hungry and would cry a lot more." N.S. was previously hospitalized with "Covid, rhino, a diaper rash, and a yeast infection." After her discharge, she was then readmitted upon discovering she was allergic to a diaper rash cream. Respondent explained N.S., "[f]rom a very early age[,] *** was either sick or [had] diaper rash we could not get rid of."

¶ 22 Respondent indicated her mother, her brother, and her brother's girlfriend occasionally cared for N.S. while she and Tyler S. were at work. Respondent testified, in late November or early December 2022, they "had started introducing tummy time as well as playing on mats and stuff to get [N.S.] to learn to roll over and to be more interactive at a young age."

¶ 23 According to respondent, on December 14, 2022, she worked from 9 a.m. to 3:30 p.m. at her first job and then 4:30 p.m. to 9 p.m. at her second job. During that time, N.S. was in the care of Tyler S., and A.S. was in the care of respondent's brother and his girlfriend. Respondent's brother lived with respondent, Tyler S., and the minors. On the morning of December 15, 2022, respondent left N.S. in the care of Tyler S. when she went to work. She later left work and met N.S. at the hospital.

¶ 24 Respondent testified she was at the hospital daily upon N.S.'s admission but then, around December 25, was told by DCFS she could "no longer be in the hospital full time." She then went to St. Louis "with a friend" for a few days because she was under "a lot of stress and depression." She explained she was stressed from "not having my kids in the home," "finding out

I was pregnant at the same timeframe," and "[t]he runaround with the doctors." She acknowledged having been diagnosed with "bipolar one rapid cycling," borderline personality disorder, and posttraumatic stress disorder, conditions she asserted she was maintaining in December 2022 without medications. On January 9, 2023, respondent requested DCFS ban her mother from visiting N.S. because she was "angry" that her mother told her she was not allowed to hold N.S.

¶ 25　　　　Respondent explained she was no longer employed because her employers were unable to accommodate her being at the hospital with N.S. She asserted the minors were her "safe spot," and she had never physically abused or shaken N.S.

¶ 26　　　　The trial court found the allegations of the petitions had been proven but declined to make a finding concerning who specifically inflicted the abuse upon N.S. The court found N.S. to be both neglected and abused and A.S. to be neglected.

¶ 27　　　　　　　　　　　　　E. Dispositional Hearing

¶ 28　　　　Immediately following the conclusion of the adjudicatory hearing, the trial court commenced a two-day dispositional hearing, which concluded on August 2, 2023. The court received a dispositional report with several addendums. The court also heard from a DCFS caseworker who had been assigned to the minors' cases, as well as respondent.

¶ 29　　　　In relevant part, the evidence showed respondent had been using marijuana while pregnant and had a history of drug use. The caseworker testified, in 2017, respondent, who at the time was a minor, was indicated by DCFS for sexual abuse against a sibling. Respondent testified she had not, in fact, been indicated for sexual abuse. She asserted she made a false allegation that she had sexually abused a sibling to avoid being returned home because she was "still processing childhood trauma," which included "human trafficking." She spent several years at a residential

facility, "Indian Oaks." Respondent, at the time of the hearing, was in a relationship with a man who was a registered sex offender. Respondent completed a psychological assessment. That assessment recommended she follow up with psychiatric care. It was also recommended respondent complete a mental health evaluation, which she had not done. Respondent obtained housing outside of Peoria County. Respondent testified she left Peoria County to be closer to her support system and to have quicker access to housing. She was seeking assistance with securing a vehicle. Respondent's mother was being investigated by law enforcement for performing a sex act in a public place and in the presence of a minor.

¶ 30      With respect to recommendations, it was undisputed the minors should be made wards of the court, guardianship and custody should not be placed with the parents, and the parents should be ordered to complete certain services. As to the basis for placing the minors outside the care of respondent, respondent's counsel argued respondent should be found unable as opposed to unfit. Respondent's counsel suggested respondent's mother should be considered as a possible guardian of the minors. Respondent's counsel argued respondent should not be ordered to complete drug drops or "sex[-]offender treatment or anything like that."

¶ 31      The trial court, after considering the evidence and recommendations, made the minors wards of the court, placed guardianship and custody with DCFS based upon the unfitness of the parents, and ordered respondent to, amongst other things, submit to random drug drops and complete a sex-offender assessment.

¶ 32           F. Notices of Appeal and Appointment of Appellate Counsel

¶ 33      Also in August 2023, respondent filed *pro se* notices of appeal. Thereafter, the trial court appointed appellate counsel to represent respondent in the appeals. The appeals were then

consolidated by this court on the motion of appellate counsel.

¶ 34                              G. Motion to Withdraw as Appellate Counsel

¶ 35          In October 2023, appellate counsel filed a motion to withdraw on the ground no issue of arguable merit could be raised. Counsel's motion was accompanied by a brief. The brief summarized the proceedings in the trial court, identified potential issues for review, sketched arguments in support of the identified issues, and explained why counsel believed the arguments were frivolous.

¶ 36                      H. Denial of the Motion to Withdraw Without Prejudice

¶ 37          In December 2023, this court issued a summary order denying appellate counsel's motion to withdraw without prejudice. *In re N.S*, No. 4-23-0783 (2023) (unpublished summary order under Illinois Supreme Court Rule 23(c)(2)). The denial was based upon appellate counsel's failure to identify a potential issue related to the trial court's refusal to entertain the appointment of counsel for respondent at the shelter care hearing.

¶ 38                              I. Motion to Withdraw as Appellate Counsel

¶ 39          In January 2024, respondent's appellate counsel filed another motion to withdraw on the ground no issue of arguable merit could be raised. Counsel's motion, which is the subject of this appeal, is accompanied by a supplemental brief addressing the potential issue previously identified by this court. Specifically, counsel summarizes the proceedings in the trial court relevant to the issue, sketches an argument in support of the issue, and explains why counsel believes the argument is frivolous.

¶ 40                                      II. ANALYSIS

¶ 41          Appellate counsel claims no issue of arguable merit can be raised on appeal. For

the reasons that follow, we agree.

¶ 42                                      A. Timeliness of This Disposition

¶ 43           As an initial matter, we must address the timeliness of this disposition. This case has been designated as accelerated pursuant to Illinois Supreme Court Rule 311 (eff. July 1, 2018). Rule 311(a)(5) states, in relevant part, "[e]xcept for good cause shown, the appellate court shall issue its decision within 150 days after the filing of the notice of appeal." Ill. S. Ct. R. 311(a)(5) (eff. July 1, 2018). In this case, the motion practice on appeal resulted in the matter not being submitted for disposition until after the 150-day deadline had passed. Under these circumstances, we find the existence of good cause for the late disposition.

¶ 44           B. Timeliness of the Adjudicatory and Dispositional Hearings

¶ 45           Appellate counsel considered objecting to the timeliness of the adjudicatory and dispositional hearings but concluded her argument in support thereof would be frivolous.

¶ 46           Section 2-14 of the Juvenile Court Act of 1987 (Act) (705 ILCS 405/2-14 (West 2022)) provides an adjudicatory hearing generally must be commenced within 90 days of the date of service upon the minor, parents, guardian, or legal custodian and, once commenced, any subsequent delay may be allowed only when necessary to ensure a fair hearing. Section 2-22(4) of the Act (*id*. § 2-22(4)), in turn, provides a dispositional hearing generally must occur within six months of a minor's removal from the minor's home. Objections to the timeliness of the adjudicatory and dispositional hearing must be raised in the trial court. See *In re S.W.*, 342 Ill. App. 3d 445, 452-53, 794 N.E.2d 1037, 1043 (2003); see also *In re B.S.*, 2022 IL App (2d) 220271, ¶ 36, 213 N.E.3d 1007 ("Forfeiture principles apply to proceedings under the Act.").

¶ 47           In this case, the record shows respondent largely invited or did not object to the

delay in the proceedings. To the extent she did object, the delay was found to be in the minors' best interests and necessary due to the clarification of respondent's answer. Moreover, the record does not show any prejudice resulting from the delay. On this record, we agree any argument in support of an objection to the timeliness of the adjudicatory and dispositional hearings would be frivolous.

¶ 48                                     C. Adjudicatory Findings

¶ 49          Appellate counsel considered objecting to the adjudicatory findings but concluded her argument in support thereof would be frivolous.

¶ 50          Before a minor may be made a ward of the court, the minor must be found to be abused, neglected, or dependent. *In re A.P.*, 2012 IL 113875, ¶ 19, 981 N.E.2d 336. Relevant here, section 2-3(1)(b) of the Act (705 ILCS 405/2-3(1)(b) (West 2022)) defines a neglected minor as any minor "whose environment is injurious to the minor's welfare." Section 2-3(2)(i) of the Act (*id*. § 2-3(2)(i)), in turn, defines an abused minor as a minor whose parent "inflicts, causes to be inflicted, or allows to be inflicted upon such minor physical injury, by other than accidental means, which causes death, disfigurement, impairment of physical or emotional health, or loss or impairment of any bodily function."

¶ 51          In this case, the record shows Tyler S. stipulated to the allegations in the petitions, with the caveat that he did not physically abuse N.S. The trial court also received evidence indicating N.S. was found to have injuries which were "highly suspicious for abuse." On this record, we agree any argument in support of an objection to the adjudicatory findings would be frivolous.

¶ 52                                     D. Dispositional Findings

¶ 53    Appellate counsel considered objecting to the dispositional findings but concluded her argument in support thereof would be frivolous.

¶ 54    After a minor has been found to be abused, neglected, or dependent, a trial court must conduct a dispositional hearing. *A.P.*, 2012 IL 113875, ¶ 21. "At the dispositional hearing, the court shall determine whether it is in the best interests of the minor and the public that the minor be made a ward of the court, and, if the minor is to be made a ward of the court, the court shall determine the proper disposition best serving the health, safety[,] and interests of the minor and the public." 705 ILCS 405/2-22(1) (West 2022). Under section 2-27(1)(d) of the Act (*id.* § 2-27(1)(d)), a proper disposition includes placing guardianship and custody with DCFS if the minor's parents are found to be unfit or unable to care for the minor.

¶ 55    In this case, the record shows the only dispositional matters in dispute by respondent concerned whether she should be found unfit and ordered to complete drug drops and a sex-offender assessment, and whether respondent's mother should be appointed guardian of the minors. The evidence before the trial court showed (1) respondent had serious mental health issues for which she had not sought recommended services, (2) respondent had a history of drug use and had previously been indicated for sexual abuse, and (3) respondent's mother was being investigated for performing a sex act in a public place and in the presence of a minor. On this record, we agree any argument in support of an objection to the dispositional findings would be frivolous.

¶ 56                        E. Counsel at the Shelter Care Hearing

¶ 57    Appellate counsel considered objecting to the absence of counsel at the shelter care hearing but concluded her argument in support thereof would be frivolous.

¶ 58        Section 1-5(1) of the Act (*id.* § 1-5(1)) provides that "the minor's parents, guardian, legal custodian or responsible relative who are parties respondent" have, amongst other rights, the right to be represented by counsel "at all stages of the trial court proceeding[s]." This statutory right to counsel "attaches when the State files an action under the [Act]." *In re Adoption of K.L.P.*, 198 Ill. 2d 448, 467, 763 N.E.2d 741, 752 (2002).

¶ 59        In this case, the record shows respondent was not prejudiced by the absence of counsel at the shelter care hearing: the evidence presented at the shelter care hearing supported the minors' temporary placement, respondent was appointed counsel immediately after the shelter care hearing, respondent's appointed counsel did not raise any objection related to the shelter care hearing, respondent stipulated to allegations of neglect and abuse, the evidence presented at the adjudicatory hearing supported the findings of neglect and abuse, and respondent did not dispute the minors should be made wards of the court and guardianship and custody should not be placed with her or Tyler S. On this record, we agree any argument in support of an objection to the absence of counsel at the shelter care hearing would be frivolous.

¶ 60        While respondent cannot establish prejudice under the circumstances presented, we find the manner in which the trial court conducted the shelter care hearing troubling. See *In re Austin D.*, 358 Ill. App. 3d 277, 285, 831 N.E.2d 1215, 1220-21 (2005). We, once again, "emphatically remind trial courts that they should always inform parents at shelter care hearings of the right to counsel and appoint counsel if requested." *In re K.G.*, 2021 IL App (4th) 210405-U, ¶ 74; see Ill. S. Ct. R. 23(e)(1) (eff. Feb. 1, 2023) (stating nonprecedential orders under Rule 23(b) may be cited for persuasive purposes). We further remind the State, "[i]f a trial court, for whatever reason, fails to provide a statutorily required right to a respondent, it is the State's duty

to so inform the court and request that the error be corrected." *K.G.*, 2021 IL App (4th) 210405-U, ¶ 75.

¶ 61                                   III. CONCLUSION

¶ 62        Because the record reveals no issue of arguable merit can be raised on appeal, we grant appellate counsel's motion to withdraw and affirm the trial court's orders.

¶ 63        Affirmed.