No. 3--08--0976
(Consolidated with Nos. 3--08--0977, 3--08--0979, and
3--08--0980)

Filed November 9, 2009

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2009

| | |
|---|---|
| In re D.M. and R.O.M., | ) Appeal from the Circuit Court |
| | ) of the 9th Judicial Circuit, |
| Minors | ) McDonough County, Illinois, |
| | ) |
| (The People of the State of | ) |
| Illinois, | ) |
| | ) |
| Petitioner-Appellee, | ) Nos. 08--JA--1 and |
| | ) 08--JA--2 |
| v. | ) |
| | ) |
| Ronald M. and Dayna M., | ) Honorable |
| | ) Patricia A. Walton, |
| Respondents-Appellants). | ) Judge, Presiding. |

JUSTICE SCHMIDT delivered the opinion of the court:

The State filed petitions alleging that the minors D.M. and R.O.M., children of the respondents, Ronald M. and Dayna M., were abused and neglected. Before ruling on the petitions, the court issued orders that concerned: (1) tasks for the parents to complete, including a sex offender assessment for Ronald; and (2) the foster placement of the children. Also before the adjudication, Ronald filed a motion for substitution of judge as of right (735 ILCS 5/2--1001(a)(2) (West 2008)), which the court denied. Later, the court adjudicated the minors to be abused and neglected. In its dispositional ruling, among other things, the court ordered: (1) Ronald to cooperate with any recommendations

made as a result of the sex offender assessment; and (2) the respondents to apply for employment.

On appeal, the respondents argue that the court: (1) erred by denying Ronald's motion for substitution of judge as of right; (2) erred by ordering Ronald to cooperate with any recommendations made as a result of the sex offender assessment; and (3) violated their equal protection rights by ordering them to obtain employment. We affirm.

## I. BACKGROUND

D.M., a female, was born on January 20, 2003. R.O.M., a male, was born on May 14, 2006. On January 18, 2008, the State filed substantially similar juvenile petitions regarding D.M. and R.O.M. In these petitions, the State alleged that the children were both: (1) abused (705 ILCS 405/2--3(2) (West 2008)); and (2) neglected because of an injurious environment (705 ILCS 405/2--3(1)(b) (West 2008)).

On January 18, 2008, the court held an emergency shelter care hearing. At this proceeding, the parties agreed to temporary foster placement of the children with their paternal grandmother, which the court then ordered.

On February 14, 2008, the respondents made their first appearances in court with their separate court-appointed attorneys. The parties presented the court with an agreement concerning assessments that they wished to complete but that the Department of Children and Family Services (DCFS) would not pay for without a court order. Accordingly, on February 15, 2008,

2

the court issued a written order, which required: (1) Dayna to attend a parenting class and to submit to assessments both for (a) anger management and (b) drug and alcohol abuse; and (2) Ronald to successfully complete a parenting class and to submit to assessments for both (a) the likelihood that he would commit a sex offense and (b) drug and alcohol abuse. The February 15 order also: (1) stated that the respondents' visitation with the children was to be at the discretion of DCFS, at a minimum of once per week; and (2) set the hearing for the respondents to either admit or deny the allegations of the petitions for March 20, 2008.

On March 20, 2008, the parties asked the court to continue the hearing to either admit or deny. Then, the parties presented the court with another agreement, which the court issued in a written order on March 27, 2008. This document stated that: (1) the foster parent and Lutheran Social Services (LSS) had the discretion to permit the respondents either to reside in the foster home, to exclude the respondents from the foster home, or to place the children elsewhere; (2) LSS was to schedule psychological and substance abuse evaluations for the respondents; (3) the respondents were to cooperate with the service providers; and (4) a status hearing was set for May 15, 2008.

Thereafter, the hearing to either admit or deny was continued several times. On August 21, 2008, the court issued two virtually identical orders, regarding D.M. and R.O.M.,

3

stating that "based upon the caseworkers [sic] knowledge of the current placement, it is in the [children's] Best Interests that DCFS or it's [sic] designee shall remove the minor [children] from the home of [the paternal grandmother] instanter and place [them] in a DCFS approved Foster Home."

On September 16, 2008, the State filed substantially similar amended juvenile petitions alleging that D.M. and R.O.M. were abused and neglected. In the amended petitions, in addition to the neglect and abuse allegations in the original petitions, the State submitted that the children were neglected because they were not receiving the proper care necessary for their well-being (705 ILCS 405/2--3(1)(a) (West 2008)).

On September 22, 2008, Ronald moved for substitution of judge as of right, and submitted a second version of the motion, to correct a typographical error, on September 25, 2008. The hearing to either admit or deny had been continued to September 25. At the beginning of this proceeding, the court heard arguments on Ronald's motion, and denied it, ruling that: (1) the motion was untimely because the case had been set for adjudication; and (2) the court had made substantive rulings concerning both: (a) evaluations for the respondents, and (b) issues regarding placement of the minors. Next, both of the respondents denied the allegations in the petitions.

The court held the adjudicatory hearing on October 9 and 23, 2008, in which it found the children to be abused and neglected. The court issued its written adjudication on October 30, 2008.

4

On November 20, 2008, the court held the dispositional hearing. The court admitted both the dispositional hearing report and the social history report prepared by LSS. The dispositional report showed that neither of the respondents was employed and both had incurred substantial credit card debts. The report contained 31 enumerated recommendations, including that: (1) Ronald cooperate with the recommendations made as a result of the sex offender assessment; and (2) the respondents locate and secure financial means by applying for employment. At the hearing, Ronald objected to these and most of the other recommendations in the report.

The record contains the sex offender assessment for Ronald, which was prepared by LSS on May 23, 2008. The assessment showed that Ronald was born on December 9, 1967. According to this document, Ronald was indicated by DCFS in 1999 for sexually molesting and sexually penetrating his stepsister. The stepsister reported that he had fondled her breasts 10 to 20 times, beginning when she was six or seven years of age until he moved to the state of Georgia with his brother. The record does not indicate when the respondent moved to Georgia. The stepsister was 17 years old when she reported Ronald's sexual molestation to the police on February 10, 1999. On this date, she also reported that Ronald had raped her when she was approximately eight years old. The record does not indicate that Ronald was convicted of a sex offense.

The assessment also noted that Ronald had stated that while

5

he and his family lived in Georgia, his nine-year-old nephew sexually molested D.M. when she was four years old. Ronald had said that his mother-in-law "saw his nephew on top of [D.M.] with his clothes off." The assessment said, "[Ronald] stated that a child at age 4, referring to his daughter, 'does not know what is going on anyways.' Regarding the alleged sexual abuse of his 4 year old daughter, [Ronald] stated 'I know it's serious, but it's not that serious.'"

As part of the assessment, Ronald was given 15 self-reporting questionnaires, one of which concerned alcoholism. Based on Ronald's history, interviews with Ronald, and the results of the questionnaires, the assessment concluded that he was at a moderate risk to sexually offend. The assessment especially noted Ronald's lack of concern regarding the allegations that D.M. had been sexually molested by his nephew.

At the conclusion of the dispositional hearing, the court made the children wards of the court and found the respondents to be unfit. On December 4, 2008, the court issued its written dispositional ruling, in which, among other things, it ordered: (1) Ronald to cooperate with any recommendations made as a result of the sex offender assessment; and (2) the respondents to locate and to secure financial means by applying for employment. The respondents appealed.

## II. ANALYSIS

### A. Motion for Substitution of Judge

The respondents contend that the trial court erred by

6

denying Ronald's motion for substitution of judge as of right. Specifically, the respondents submit that the rulings made by the court before Ronald filed his motion were not substantial because they were based on the agreements of the parties. We note that cases concerning such a motion appear to use the terms "substantive" and "substantial" interchangeably. See, e.g., Gay v. Frey, 388 Ill. App. 3d 827, 905 N.E.2d 333 (2009); In re Austin D., 358 Ill. App. 3d 277, 831 N.E.2d 1215 (2005).

By statute, a party is entitled to substitution of judge as of right if, prior to the filing of the motion, the court has not ruled on a substantial issue. 735 ILCS 5/2--1001(a)(2) (West 2008). Such a motion is untimely if it was filed after the judge has ruled on a substantive issue in the case. Austin D., 358 Ill. App. 3d 277, 831 N.E.2d 1215. The reason for this policy is to prevent a litigant from judge shopping after forming an opinion that the judge may be unfavorably disposed toward his case. Austin D., 358 Ill. App. 3d 277, 831 N.E.2d 1215. A substantive ruling is one that directly relates to the merits of the case. Austin D., 358 Ill. App. 3d 277, 831 N.E.2d 1215. Such a motion also may be denied, in the absence of a substantive ruling, if the movant had the opportunity to form an opinion as to the judge's reaction to her claims. Austin D., 358 Ill. App. 3d 277, 831 N.E.2d 1215. Our review of a trial court's ruling on a motion for substitution of judge as of right is de novo. In re Marriage of Petersen, 319 Ill. App. 3d 325, 744 N.E.2d 877 (2001).

7

In the present case, before Ronald filed his motion, the judge issued several rulings concerning: (1) tasks for the parents to complete; and (2) the foster placement of the children. Such rulings concerned matters that directly related to the merits of the case. See Austin D., 358 Ill. App. 3d 277, 831 N.E.2d 1215. Furthermore, Ronald filed his motion long after he had the opportunity to form an opinion concerning the judge's reactions to his claims. See Austin D., 358 Ill. App. 3d 277, 831 N.E.2d 1215. For these reasons, Ronald's motion was not timely filed. See Austin D., 358 Ill. App. 3d 277, 831 N.E.2d 1215.

The respondents argue that the judge's rulings were not substantial because they were based on the agreements of the parties. First, we note that the respondents have not cited any authority for the proposition that a ruling based on the agreement of the parties is not substantive. Moreover, we observe that trial courts maintain discretion concerning whether to issue an order based on an agreement by the parties. See, e.g., In re Estate of Stepp, 271 Ill. App. 3d 817, 648 N.E.2d 1120 (1995). If a court issues such an order, it is the court, and not the parties, that has so ruled. See Stepp, 271 Ill. App. 3d 817, 648 N.E.2d 1120. We find that a court order based on an agreement by the parties may be, nonetheless, a substantive ruling. Thus, we reject this aspect of the respondents' argument. We hold, therefore, that the trial court did not err by denying Ronald's motion for substitution of judge as of right.

8

See Petersen, 319 Ill. App. 3d 325, 744 N.E.2d 877.

## B. Dispositional Order

### 1. Recommendations Based on the Sex Offender Assessment

Ronald contends that the trial court erred in its dispositional ruling by ordering him to follow any recommendations made as a result of the sex offender assessment.

At the dispositional hearing, the trial court must consider the best interest of the child.  705 ILCS 405/2--27(1) (West 2008); In re April C., 326 Ill. App. 3d 225, 760 N.E.2d 85 (2001).  We will reverse a trial court's dispositional determination only if the findings of fact are against the manifest weight of the evidence or if the trial court abused its discretion by selecting an inappropriate dispositional order. April C., 326 Ill. App. 3d 225, 760 N.E.2d 85.

In this case, the trial court ordered Ronald to submit to a sex offender assessment, which was completed prior to the dispositional hearing.  Then, in its dispositional ruling, the court ordered Ronald to follow any recommendations made as a result of the assessment.  We cannot say that such an order was against the best interests of the children, given the questions raised in the assessment concerning Ronald's past sexual conduct and his risk to offend.  See April C., 326 Ill. App. 3d 225, 760 N.E.2d 85.  Therefore, we rule that the trial court's findings of fact were not against the manifest weight of the evidence, and the court did not abuse its discretion by ordering Ronald to follow any recommendations made as a result of the sex offender

9

assessment.  See April C., 326 Ill. App. 3d 225, 760 N.E.2d 85.

Ronald cites In re J.H., 212 Ill. App. 3d 22, 570 N.E.2d 689 (1991), for the proposition that the court abused its discretion. In J.H., the appellate court held that the trial court had abused its discretion in its dispositional ruling by ordering the respondent to participate in sexual abuse counseling.  In that case, the minor children's mother had died, and they had lived thereafter with the respondent father.  The trial court's order concerning sexual abuse counseling was based solely on a DCFS report that the father had rubbed his minor daughter's genitals several times and that he and the daughter had slept together in the same bed.  The J.H. court found that such evidence was insufficient to require the respondent to participate in sexual abuse counseling.

In the present case, unlike J.H., the evidence presented in the sex offender assessment consisted of far more than the DCFS indication of Ronald's sexual misconduct.  The assessment, unlike the evidence in J.H., also relied upon: (1) Ronald's lack of concern regarding allegations that his nephew sexually molested D.M.; (2) interviews with Ronald; and (3) the results of several questionnaires.  Moreover, the assessment concluded that, taking several factors into account, Ronald was at a moderate risk to offend.  The court in J.H. relied upon no such thorough assessment.  Because J.H. is factually distinguishable, we find its holding to be inapposite to the instant case.

2. Equal Protection

10

The respondents argue that the court's dispositional ruling violated their equal protection rights by ordering them to obtain employment. Specifically, the respondents submit that the court does not treat similarly situated respondents similarly by requiring both employed and unemployed respondents to obtain employment. The State notes that the court did not order the respondents to obtain employment, but rather, only to apply for employment.

As a preliminary matter, we observe that, in their brief, the respondents contend that the court violated their equal protection rights under the United States Constitution. However, they have cited Jacobson v. Department of Public Aid, 171 Ill. 2d 314, 664 N.E.2d 1024 (1996), which discusses the equal protection provisions of both the United States Constitution and the Illinois Constitution. Therefore, we construe the respondents' argument to concern both.

In Jacobson, 171 Ill. 2d 314, 664 N.E.2d 1024, the Illinois Supreme Court stated that the analysis it applied in assessing equal protection claims is the same under both the United States and Illinois Constitutions. The constitutional right to equal protection requires that the government treat similarly situated individuals in a similar manner. Jacobson, 171 Ill. 2d 314, 664 N.E.2d 1024.

We find that although both employed and unemployed parents may be respondents in juvenile proceedings, they obviously are not similarly situated with regard to employment and their means

11

of financial support for a family. Moreover, it would be absurd for a court to order employed respondents to apply for employment. Thus, the trial court in this case did not violate the respondents' equal protection rights by ordering them to apply for employment. We hold, therefore, that this aspect of the dispositional order was neither against the manifest weight of the evidence, nor an abuse of the court's discretion.

Dayna further contends that she may be unable to obtain employment because she may be disabled. However, we note that this issue is not ripe because there has not been a finding either that Dayna is disabled or, if she is found disabled, that her disability would prevent her from seeking employment.

### III. CONCLUSION

For the foregoing reasons, we affirm the dispositional order of the McDonough County circuit court.

Affirmed.

LYTTON and McDADE, JJ., concur.