# Illinois Official Reports

## Appellate Court

---

| | |
|---|---|

### *U.S. Bank National Ass'n v. Miller*, 2020 IL App (1st) 191029

| | |
|---|---|
| Appellate Court Caption | U.S. BANK NATIONAL ASSOCIATION, as Successor Trustee to Bank of America, N.A., as Successor by Merger to LaSalle Bank N.A., as Trustee for Merrill Lynch First Franklin Mortgage Loan Trust, Mortgage Loan Asset-Backed Certificate, Series 2007-5, Plaintiff and Counterdefendant-Appellee, v. JOHN MILLER, a/k/a John L. Miller, a/k/a Jon L. Miller; ROOSJATI MILLER; NEWBERRY PLAZA CONDOMINIUM ASSOCIATION; UNKNOWN OWNERS; and NONRECORD CLAIMANTS, Defendants (John Miller and Roosjati Miller, Defendants and Counterplaintiffs-Appellants). |
| District & No. | First District, Sixth Division<br>No. 1-19-1029 |
| Filed<br>Rehearing denied | March 20, 2020<br>June 8, 2020 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 09-CH-28413; the Hon. Edward Robles and the Hon. Ann M. Loftus, Judges, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | John L. Miller, of Naperville, appellant *pro se*.<br><br>Harry N. Arger and Rosa M. Tumialán, of Dykema Gossett, PLLC, of Chicago, for appellee. |

JUSTICE CUNNINGHAM delivered the judgment of the court, with opinion.

Presiding Justice Mikva and Justice Harris concurred in the judgment and opinion.

## OPINION

¶ 1      The defendants-appellants, John and Roosjati Miller, appeal from the judgment of the circuit court of Cook County in this mortgage foreclosure action dismissing their counterclaim alleging that plaintiff-appellee U.S. Bank National Association (U.S. Bank) violated their right of rescission under the Truth in Lending Act (TILA) (15 U.S.C. § 1601 *et seq.* (2006)), on the ground that it was barred by the statute of limitations. The Millers also challenge the denial of their motion for substitution of judge. For the following reasons, we affirm the judgment of the circuit court of Cook County.

¶ 2                                    BACKGROUND

¶ 3      On July 2, 2007, the Millers refinanced their mortgage, which encumbered the property located at 1030 North State Street, Unit 9D, in Chicago, and secured a note reflecting a $210,000 loan.

¶ 4      Two years later, on August 14, 2009, U.S. Bank filed a complaint seeking to foreclose the mortgage. After 19 unsuccessful attempts to serve the Millers, U.S. Bank finally served them by publication in November 2009.

¶ 5      The parties proceeded to engage in extensive motion practice beginning in 2010 and continuing through 2011. During that time, U.S. Bank filed an amended complaint attaching the mortgage and note as exhibits (which it had failed to do in its initial complaint). Additionally, in November 2011, the Millers answered the complaint after their motion to dismiss was denied. The Millers' answer included affirmative defenses and counterclaims, one of which alleged that the initial lender violated TILA by materially changing the terms and type of the loan on the date of closing and also failing to provide John with a Real Estate Settlement Procedures Act of 1974 (12 U.S.C. § 2601 *et seq.*) statement at the closing. The counterclaim further alleged that the Millers rescinded the loan, in writing, on June 28, 2010, but U.S. Bank never responded to the rescission.

¶ 6      The record reflects that no action was taken on the case following the filing of the Millers' answer and, on June 12, 2013, the circuit court entered an order striking the case from the court's docket.

¶ 7      Almost one year later, on May 5, 2014, U.S. Bank moved to dismiss the Millers' affirmative defenses and counterclaims. With regard to the rescission claim, U.S. Bank argued that it was time-barred. In response, the Millers filed a motion to dismiss U.S. Bank's foreclosure complaint for want of prosecution and to default U.S. Bank for its failure to answer their counterclaims and affirmative defenses. No copy of either motion appears in the record on appeal.

¶ 8        The circuit court denied the Millers' motions on September 9, 2014. Following that denial, on October 7, 2014, the Millers responded to U.S. Bank's motion to dismiss. At the same time, the Millers moved to reconsider the denial of their motion to dismiss and their motion for default.

¶ 9        On October 23, 2014, more than five years after U.S. Bank filed its initial foreclosure complaint, the Millers moved to substitute judge as of right, arguing that the current judge had yet to make a substantive ruling.

¶ 10       On November 13, 2014, the court entered an order that, in relevant part, (1) denied the Millers' motion to substitute judge; (2) denied their motion to reconsider; and (3) dismissed, without prejudice, their counterclaim and affirmative defense regarding the violation of their right to rescind the loan.

¶ 11       Several rounds of amendments of the Millers' counterclaim followed, and the Millers filed their third amended counterclaim—the operative pleading in this case—on October 27, 2016. In that counterclaim, the Millers alleged that despite executing six copies of a "Notice of Right to Cancel" at the closing, John did not receive a copy to keep, which was a material violation of TILA. According to the Millers, this violation enabled them to exercise their right of rescission pursuant to section 1635(f) of TILA (15 U.S.C. § 1635(f) (2006)) within three years from the date the loan was executed. On June 30, 2010, the Millers, through counsel, mailed a notice of rescission to the original lender, First Franklin Corporation (First Franklin), as well as U.S. Bank. But neither First Franklin nor U.S. Bank responded to the rescission or terminated their security interest in the property, as required by section 1635(b) of TILA (*id.* § 1635(b)). The Millers' counterclaim therefore sought rescission of the transaction, termination of the security interest, return of money given by them in connection with the transaction, and reasonable attorney fees.

¶ 12       U.S. Bank initially answered the Millers' counterclaim but then sought and was granted leave to withdraw its answer and file a motion to dismiss. U.S. Bank's motion to dismiss, filed on March 28, 2017, argued that the TILA rescission claim was time-barred. Following briefing and a hearing, the circuit court agreed with U.S. Bank and dismissed the counterclaim with prejudice as untimely. The court went on to deny the Millers' motion to reconsider and later denied the Millers' motion to amend their answer to include the TILA rescission claim as an affirmative defense.

¶ 13       On March 13, 2018, U.S. Bank moved for summary judgment on its foreclosure complaint. While there is no order in the record granting the motion, a judgment of foreclosure and sale of the property was entered on July 10, 2018. A judicial sale of the property was held, and the court subsequently entered an order confirming that sale on April 17, 2019. The Millers timely appealed.

¶ 14                                    ANALYSIS

¶ 15       We note that we have jurisdiction to review this matter, as the Millers filed a timely notice of appeal following the order confirming the sale of the property. Ill. S. Ct. R. 301 (eff. Feb. 1, 1994); R. 303 (eff. July 1, 2017).

¶ 16       We turn first to the Millers' challenge to the circuit court's denial of their motion for substitution of judge as of right. A party is entitled to a single substitution of judge, without cause, as of right if the court has not held a hearing and the judge hearing the motion has not yet ruled on a "substantial issue." 735 ILCS 5/2-1001(a)(2)(ii) (West 2016). The purpose of

these limitations on the right to request a substitution of judge is to preclude judge shopping. See *Bowman v. Ottney*, 2015 IL 119000, ¶¶ 18, 25. A "substantial issue" is one that relates to the merits of the case. *In re Marriage of Crecos*, 2015 IL App (1st) 132756, ¶ 25. But even in the absence of a substantial ruling, a court may deny a motion to substitute if the movant had an opportunity to form an opinion on the judge's reaction to his claims. *In re D.M.*, 395 Ill. App. 3d 972, 976-77 (2009). We review a trial court's ruling on a motion to substitute judge as of right *de novo*. *Id.* at 977.

¶ 17 Here, the Millers moved for substitution of judge in October 2014, over five years after U.S. Bank filed its complaint seeking foreclosure of the property and almost three years after the Millers filed their counterclaims and affirmative defenses. Significantly, at the time the Millers filed their motion for substitution, the court had already denied their motion to dismiss U.S. Bank's complaint for want of prosecution as well as their motion to default U.S. Bank for failure to answer their counterclaims and affirmative defenses. Contrary to the Millers' contention, these were substantive rulings. See *Antkiewicz v. Pax/Indianapolis, Inc.*, 254 Ill. App. 3d 723, 727 (1993) (holding that denial of motion for default judgment constitutes a resolution of a "substantial issue" for purposes of motion to change venue); *City of Quincy v. Weinberg*, 363 Ill. App. 3d 654, 662 (2006) (finding that grant of motion for default judgment directly related to merits of case such that defendant's motion to substitute judge as of right, filed after the circuit court's ruling on the motion for default, was not timely filed). Accordingly, we conclude that the trial court did not err in denying the Millers' belated motion for substitution of judge as of right.

¶ 18 Next, we turn to the Millers' challenge to the court's dismissal of their third amended counterclaim pursuant to section 2-619 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619 (West 2016)). A section 2-619 motion to dismiss admits the legal sufficiency of the complaint but asserts that an affirmative matter bars the plaintiff's claim. *Id.*; see also *Lake Point Tower Condominium Ass'n v. Waller*, 2017 IL App (1st) 162072, ¶ 11. Here, U.S. Bank brought its motion pursuant to section 2-619(a)(5) of the Code, which provides that an action may be dismissed if it was not "commenced within the time limited by law." 735 ILCS 5/2-619(a)(5) (West 2016); see also *Johnson v. The Augustinians*, 396 Ill. App. 3d 437, 439 (2009). We review *de novo* the circuit court's decision on a motion to dismiss on this basis. *Ferguson v. City of Chicago*, 213 Ill. 2d 94, 99 (2004).

¶ 19 In order to determine the applicable statute of limitations, we must first consider the allegations in the Millers' counterclaim. The counterclaim generally alleges that U.S. Bank failed to respond or take action after receiving the Millers' timely notice of rescission of the loan. The counterclaim then asks the court for rescission of the loan, termination of U.S. Bank's security interest in the property, and a return of all money the Millers paid in connection with the transaction. These are all forms of relief available under section 1635 of TILA. 15 U.S.C. § 1635(b) (2006). Finally, the counterclaim seeks an award of costs and attorney fees "as provided under section 1640(a) [of TILA]."

¶ 20 We next explore the relationship between sections 1635 and 1640 of TILA. Section 1635 provides for the *equitable* remedy of rescission under certain circumstances including where, as alleged here, the lender failed to deliver certain notices or disclosures. See *Hoang v. Bank of America*, 910 F.3d 1096, 1102 (9th Cir. 2018). Section 1640, on the other hand, provides for *legal* damages where the lender has failed to comply with the requirements of section 1635. *Id.*

¶ 21    Specifically, pursuant to section 1635, once a borrower has timely notified the lender that it is exercising its right to rescind, a lender has 20 days to return any earnest money to the borrower and to "take any action necessary or appropriate to reflect the termination of any security interest created under the transaction." 15 U.S.C. § 1635(b) (2006). If the lender fails to do this, it is liable for, *inter alia*, the costs of suit to enforce the rescission rights and attorney fees. *Id*. § 1640(a). Section 1640 explicitly states that an action brought under it must be commenced within one year from the date of the occurrence of the violation. *Id.* § 1640(e).

¶ 22    To the extent that the Millers' counterclaim seeks damages pursuant to section 1640, it is indeed untimely: the Millers filed their counterclaim on November 16, 2011, one year and four months after U.S. Bank allegedly let the 20-day period following the Millers' notice of rescission (sent on June 30, 2010) lapse without taking any action.

¶ 23    U.S. Bank argues that the same one-year limitations period should apply to the Millers' claim for relief pursuant to section 1635. Initially, U.S. Bank maintains that the Millers, through counsel, conceded the applicability of the one-year statute of limitation to their TILA counterclaim in the circuit court and instead argued that the savings clause of section 13-207 of the Code operated to render their claim timely. See 735 ILCS 5/13-207 (West 2016). Accordingly, U.S. Bank contends, they cannot take a contrary position on appeal. See *Sakellariadis v. Campbell*, 391 Ill. App. 3d 795, 800 (2009) (doctrines of invited error, waiver, and judicial estoppel prevent party from taking one position at trial and different position on appeal).

¶ 24    To be sure, at oral argument before the circuit court on U.S. Bank's motion to dismiss the Millers' third amended counterclaim, the court asked the Millers' counsel if they were "admitting there is a one-year statute of limitations, but the savings clause saves your counterclaim," to which counsel responded affirmatively. But later, counsel said "it's our position that the counterclaim is not barred by the statute of limitations in this matter." Further, the Millers' written submissions responding to U.S. Bank's motion to dismiss argued that their counterclaim was *not* barred by the statute of limitations. Viewed in context, counsel denied the applicability of the one-year statute of limitations to the counterclaim, with the exception of his equivocal verbal statement when asked by the judge in the throes of oral argument. Accordingly, counsel's isolated statement does not rise to the level of a binding concession.

¶ 25    Turning then to the merits of the dispute, we begin with an examination of *Fendon v. Bank of America, N.A.*, 877 F.3d 714 (7th Cir. 2017), on which U.S. Bank heavily relies. There, the plaintiff filed a lawsuit in federal court seeking rescission and other relief after the Illinois state court entered a final judgment confirming the foreclosure sale of his home. *Id.* at 716. The plaintiff alleged that he notified the defendant of his intent to rescind in 2008, 2009, and 2010. *Id.* The defendant ignored his 2008 and 2009 notices, rejected the third, and, in 2011, filed a foreclosure action in state court. *Id.* The Seventh Circuit held that because the property had already been sold, the *Rooker-Feldman* doctrine (see *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983)) prohibited it from unwinding that transaction. *Fendon*, 877 F.3d at 716. Nevertheless, the court considered whether it could grant the plaintiff relief "that takes as a given" the state court judgment—namely, damages under section 1640 of TILA. *Id.* The defendant, however, argued that the statute of limitations barred suit under this section, and the court agreed. The court implicitly accepted the plaintiff's claim that there was no statute of limitations on claims for rescission under section 1635 but held that because the only possible relief it could offer the

- 5 -

plaintiff was damages under section 1640, the one year statute of limitations in section 1640(e) applied to bar his claim. *Id.* at 717.

¶ 26    Here, in contrast to the plaintiff in *Fendon*, the Millers *are* seeking relief under section 1635, and because their counterclaim is pending in state court, as opposed to federal court, the *Rooker-Feldman* doctrine does not prevent them from obtaining that relief notwithstanding the fact that the property has already been sold. Thus, *Fendon* and other cases from this court applying a one-year statute of limitations to claims under section 1640 are of limited applicability here. See, *e.g.*, *Beneficial Illinois Inc. v. Parker*, 2016 IL App (1st) 160186, ¶ 17; *Financial Freedom Acquisition, LLC v. Standard Bank & Trust Co.*, 2015 IL 117950, ¶ 44.

¶ 27    Instead, we must consider the statute of limitations, if any, that is applicable to section 1635 claims, given that the section itself does not provide a limitations period. Prior to the United States Supreme Court's decision in *Jesinoski v. Countrywide Home Loans, Inc.*, 574 U.S. 259, 135 S. Ct. 790 (2015), a number of lower courts had assumed that the statute of limitations for rescission claims under section 1635 of TILA was three years from the date of the mortgage, such that a borrower had to both give notice of rescission and sue to enforce the right to rescind within the three years allowed by section 1635. See *Keiran v. Home Capital, Inc.*, 720 F.3d 721, 726-28 (8th Cir. 2013) (discussing split in the circuits prior to *Jesinoski*), *cert. granted, judgment vacated*, 135 S. Ct. 1152 (2015), *abrogated by Jesinoski*, 574 U.S. 259, 135 S. Ct. 790. But in *Jesinoski*, the Court held that a rescission is effected once a borrower notifies the lender of his intent to rescind: the borrower does *not* need to also file suit to enforce the rescission within three years of consummation of the loan. *Jesinoski*, 574 U.S. at ___, 135 S. Ct. at 792. Following *Jesinoski*, courts have struggled to agree on the appropriate statute of limitations for a claim by a borrower to enforce the right to rescind a loan.

¶ 28    The Ninth Circuit, in *Hoang*, borrowed the relevant state court limitations period for breach of contract actions. There, the plaintiffs brought an action to enforce their timely rescission notice after the defendant began foreclosure proceedings. *Hoang*, 910 F.3d at 1099. In considering when a suit to enforce a rescission must be brought after a lender fails to respond to the rescission notice, the court explained:

> "When there is no statute of limitations expressly applicable to a federal statute, 'we do not ordinarily assume that Congress intended that there be no time limit on actions at all.' *DelCostello* [*v. International Brotherhood of Teamsters*, 462 U.S. 151, 158 (1983)]. Rather, 'the general rule is that a state limitations period for an analogous cause of action is borrowed and applied to the federal claim.' [*County of Oneida v. Oneida Indian Nation of New York State*, 470 U.S. 226, 240 (1985)]." *Id.* at 1100-01.

The court applied this principle and borrowed Washington's statute of limitations for contract actions to apply to the plaintiff's rescission claim. *Id.* Significantly, the court explicitly rejected application of section 1640(e)'s one-year statute of limitations, noting:

> "TILA provides for both legal damages and equitable relief but only includes a statute of limitations for legal damages relief. The statute does not suggest that the statute of limitations for legal damages relief is also applicable to claims for equitable remedies. If Congress intended that statute to apply, Congress surely knew how to draft the statute accordingly. *** Only when a state statute of limitations would 'frustrate or significantly interfere with federal policies' do we turn instead to federal law to supply the limitation period. [*Reed v. United Transportation Union*, 488 U.S. 319, 327 (1989)]." *Id.* at 1102.

¶ 29 In a line of district court cases, however, the courts borrowed the one-year statute of limitations from section 1640(e) of TILA. See *U.S. Bank National Ass'n v. Gerber*, 380 F. Supp. 3d 429, 438 (M.D. Pa. 2018); *Jacques v. Chase Bank USA, N.A.*, No. 15-548-RGA, 2016 WL 423770 (D. Del. Feb. 3, 2016); *Fam v. Bank of America, N.A.*, No. 1:17-cv-319, 2017 WL 5139262, at *3 (E.D. Va. Oct. 6, 2017); *In re Hunter*, 400 B.R. 651, 662 (Bankr. N.D. Ill. 2009); *Stewart v. BAC Home Loans Servicing, LP*, No. 10 C 2033, 2011 WL 862938, at *6 (N.D. Ill. Mar. 10, 2011).

¶ 30 This split in federal authority begs our supreme court to take up the question of the appropriate statute of limitations for claims arising under section 1635 of TILA. In the interim, we find the line of cases leading to the district courts' conclusion to be a more reasonable path to resolution of this case. As the court noted in *Gerber*, borrowing a lengthy (state) statute of limitations, rather than using the one-year statute provided for in TILA itself, allows a borrower to sit on a claim to enforce rescission of the mortgage while keeping both the property and the loan proceeds. *Gerber*, 380 F. Supp. 3d at 438. If the rescission is proper and enforced, the lender will be entitled to no interest for this period. This seems far more generous to borrowers than is necessary to enforce the important disclosure obligations of TILA. It also seems far afield from the underlying intent of the statute.

¶ 31 Also, within 20 days of sending a notice of rescission, the borrower knows whether the bank will respect that notice. It is difficult to conceive of a justification for a lengthy statute of limitations, where the accrual of a claim is so straight forward. In addition, the rescission enforcement action is inextricably intertwined with the TILA damages claim that is expressly covered by the one-year statute of limitations. It would be surprising if Congress intended a borrower to still be able to sue to enforce their rescission rights under section 1635, when the statute of limitations had already run on that borrower's right under section 1640 to recover the costs of bringing suit and their attorney fees. While the Millers have agreed to give up those fees and costs, clearly what Congress intended was that if a borrower had to sue to enforce their right to rescission, the bank should be on the hook for the cost of doing so.

¶ 32 Finally, we are not persuaded by the *Hoang* court's conclusion that this is *not* one of the rare circumstances in which " 'a rule from elsewhere in federal law clearly provides a closer analogy than available state statutes.' " *Hoang*, 910 F.3d at 1101 (quoting *Reed v. United Transportation Union*, 488 U.S. 319, 324 (1989)). The TILA statutory remedy of rescission has little to do with common law contract rights. The general equitable remedy of rescission is available to undo a contract where, for example, there has been some fraud or misconduct in the contract formation. See, *e.g.*, *Peddinghaus v. Peddinghaus*, 314 Ill. App. 3d 900, 908 (2000). Under TILA, however, the borrower does not need to show any fraud or misconduct by the bank. Rather, there is an absolute right to rescind under TILA, provided that there is timely notice. 15 U.S.C. § 1635 (2006). While a mortgage is undoubtedly a contract, rescission is a statutory remedy having little to do with contract law. Therefore, section 1640(e) provides a closer analogy for a statute of limitations for actions to enforce a rescission than the 10-year statute for written contracts in Illinois. See *Gerber*, 380 F. Supp. 3d at 438 n.6. And application of the one-year statute renders the Millers' section 1635 claim—just as its section 1640 claim—untimely. See *supra* ¶ 22.

¶ 33 Finally, we address the Millers' challenge to the court's decision denying them leave to file an amended answer raising rescission as an affirmative defense. Amendments should generally be freely allowed (*Sheffler v. Commonwealth Edison Co.*, 399 Ill. App. 3d 51, 59

(2010)), but the right to amend a complaint is not absolute, and whether to allow amendment of a complaint is within the trial court's sound discretion (*Romito v. City of Chicago*, 2019 IL App (1st) 181152, ¶ 21). A trial court abuses its discretion where no reasonable person would take the view adopted by the court. *Board of Education of the City of Chicago v. Board of Trustees of the Public Schools Teachers' Pension & Retirement Fund*, 395 Ill. App. 3d 735, 741 (2009).

¶ 34 In reviewing a trial court's decision for an abuse of discretion, we consider the following four factors: (1) whether the amendment would cure the defective pleading, (2) whether the opposing party would sustain prejudice or surprise by the amendment, (3) whether the amendment is timely, and (4) whether the plaintiff had previous opportunities to amend the complaint. *Tomm's Redemption, Inc. v. Hamer*, 2014 IL App (1st) 131005, ¶ 13; see also *Loyola Academy v. S&S Roof Maintenance, Inc.*, 146 Ill. 2d 263, 273 (1992).

¶ 35 In this case, the basis for the trial court's decision to deny leave to amend does not appear in the record. Instead, there is only a one-page order reflecting that the trial court denied the Millers' motion "for reasons stated on record." It was the Millers' burden, as the appellants, to provide a complete record on appeal. *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984). In the absence of a record reflecting the reasons for the trial court's decision to deny amendment of the Millers' counterclaim, we must presume that the court's order conformed with the law and had a sufficient factual basis. See *Taliani v. Resurreccion*, 2018 IL App (3d) 160327, ¶ 20. Therefore, we affirm the trial court's order denying the Millers leave to amend their complaint.

¶ 36 CONCLUSION

¶ 37 For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 38 Affirmed.